UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* THE ESTATE OF ROBERT<br>CUNNINGHAM, et al.,<br><br>      Plaintiff,<br><br>      v.<br><br>MILLENNIUM LABORATORIES OF<br>CALIFORNIA, et al.,<br><br>      Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 09-12209-JLT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM

January 30, 2012

TAURO, J.

I.    Introduction

The Estate of Robert Cunningham ('Relator") brings suit asserting that Defendants[1] violated 31 U.S.C. § 3729(a), the federal False Claims Act ("FCA"), and similar statutes of fourteen states[2] and the District of Columbia. Presently at issue is Defendant's Motion to DisHmiss the First Amended Complaint [#36]. For the following reasons, Defendants' Motion is ALLOWED.

---

[1] Throughout this Memorandum, the term "Defendants" refers to Millennium Laboratories of California and John Does 1-10,000. The term "Defendant" only refers to Millennium, unless otherwise stated.

[2] The States of California, Connecticut, Florida, Georgia, Illinois, Indiana, Nevada, New Jersey, New York, Oklahoma, Rhode Island, Tennessee, Texas; and the Commonwealth of Virginia.

II.  Background

   A.  Factual Background

Because the issues analyzed here arise in the context of a motion to dismiss, this court examines the facts as they are presented in Relator's Complaint,[3] and construes those facts in the light most favorable to Plaintiff.[4]  Defendant moves to dismiss for lack of subject matter jurisdiction due to the operation of the FCA's public disclosure bar as it existed at the time Robert Cunningham filed the original Complaint in this suit.

The False Claims Act states that one who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . . is liable to the United States Government for a civil penalty . . . ."[5]  In certain instances, an individual may bring a cause of action under the FCA as a relator on behalf of the United States.[6]

The public disclosure bar of the FCA states that a court lacks jurisdiction to hear such a *qui tam* suit, unless the Government opposes:

> if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed– (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report,

---

[3] Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).

[4] See Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[5] Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a), 123 Stat. 1617, 1621 (codified as amended at 31 U.S.C. § 3729(a) (Supp. 2010)).

[6] 31 U.S.C. § 3730(b) (2006).

hearing, audit, or investigation; or (iii) from the news media.[7] In 2010, Congress amended the public disclosure bar to include the requirement that the previous public disclosure under the first sub-category occur in a federal case or hearing. Prior to the amendment, the previous public disclosure could have occurred in either a federal or state suit or hearing.[8]

The issue presented in Defendant's Motion to Dismiss is whether this court had jurisdiction over Relator's claim at the time the original complaint was filed.[9] This court, therefore, presents the facts as they are related in the original Complaint, as opposed to the facts presented in the First Amended Complaint. In order to provide a complete analysis of this argument, the court first examines the facts that Defendant argues qualify as a prior, public disclosure under the public disclosure bar of the FCA.

Defendant Millennium Laboratories of California ("Millennium") is a California company that "offers medication or prescription monitoring services for physicians."[10] Robert Cunningham was a citizen of the United States and a resident of Massachusetts.[11] In 2007 and 2008, he worked as a compliance officer for Calloway Laboratories, Inc. ("Calloway"), a competitor of

---

[7] Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901 (2010) (codified as amended at 31 U.S.C. § 3730(e)(4)(A) (Supp. 2010) (effective July 22, 2010)).

[8] 31 U.S.C. § 3730(e)(4)(A) (2006) (amended 2010).

[9] See infra Part III.A.

[10] First Am. Compl. ¶ 8 [#21].

[11] First Am. Compl.¶ 6 [#21].

Millennium. During his time at Calloway, Cunningham learned of Millennium's billing practices.[12] Cunningham filed the original Complaint in this suit on December 29, 2009, and he passed away on December 5, 2010.[13] After Cunningham's death, the Estate of Robert Cunningham was substituted as Relator.[14]

On December 24, 2009, Millennium filed a complaint against Calloway and John Does 1-50, inclusive, in the Superior Court of California ("California suit").[15] Millennium alleged, *inter alia*, defamation and intentional interference with contractual relations.[16] In the complaint, Millennium described its drug testing devices and its billing practices.[17] Millennium alleged that Greg Williams, an account executive at Calloway, e-mailed two individuals informing them that Millennium's billing practice allowed it to bill insurance companies and the government twice for the same service.[18] In an e-mail from Stephen Schur, an account executive a Calloway, to a Millennium customer, Schur stated Millennium's practices could lead to "potential legal

---

[12] First Am. Compl.¶ 6 [#21].

[13] First Am. Compl.¶ 7 [#21].

[14] First Am. Compl. ¶ 7 [#21].

[15] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1 (Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc.)].

[16] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶¶ 15-31 )].

[17] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1 (Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶ 7)].

[18] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶ 11 )].

exposure."[19] Schur e-mailed another individual and stated: "The attached document should go over the [sic] all of the info that is pertinent to a Physician Billing Model ("PBM") like Millennium's and why it is a very bad choice for physicians to put themselves at risk for potential insurance fraud."[20] In each of these three e-mails, which Millennium attached as exhibits to the complaint, Williams and Schur explained Millennium's billing practices. For examples, in one e-mail, Williams wrote:

> First, there are the patients and insurances being billed twice for the same service. Medicaid and Medicare frown upon being billed twice for the same thing. . . . Second, these in-house screens that clinics are billing the 80101 code for should be bundled, but clinics are "un-bundling" each metabolite screened for on the cup or test strip and again Medicaid and Medicare frowns upon that.[21]

Five days after Millennium filed its complaint against Calloway, Robert Cunningham filed the Complaint in the present case against Millennium in the United States District Court for the District of Massachusetts. When Robert Cunningham passed away, the Estate of Robert Cunningham stepped in as Relator.[22]

In its First Amended Complaint, Relator alleges the following. Since 2007, Millennium has provided urine drug testing services to physicians and other healthcare practitioners practicing

---

[19] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶ 12 )].

[20] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc., Ex. C.]),.

[21] See Pl.'s/Relator's Opp'n to Def. Millennium Labs. of Cal.'s Mot. to Dismiss the First Am. Compl. [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc., Ex. A.)].

[22] First Am. Compl.¶ 7 [#21].

pain management.[23] Millennium informs physicians and practitioners that under its PBM, when they use Millennium's single-specimen multi-class qualitative drug screen ("the kit"), they can bill the government or private health insurance companies for each separate drug class detected by a separate panel within the kit.[24] Millennium informs physicians and practitioners that billing for each drug class detected by a separate panel in the kit is proper under CPT code 80101QW.[25] Centers for Medicare & Medicaid Services ("CMS") explains, however, that CPT code 80101QW is the code that one should use to bill for the entire kit, not for each separate drug class detected within one kit.[26]

In Count I, Relator asserts that Millennium's billing practices violated the Federal False Claims Act. Counts II-XVI assert that the same practices also violated similar state false claims acts for the states of California, Connecticut, Florida, Georgia, Illinois, Indiana, Nevada, New Jersey, New York, Oklahoma, Rhode Island, Tennessee, Texas; the Commonwealth of Virginia; and the District of Columbia.

B. Procedural History

Robert Cunningham filed the original Complaint [#2] in this suit on December 29, 2009.[27]

---

[23] First Am. Compl. ¶ 18 [#21].

[24] First Am. Compl. ¶ 19 [#21].

[25] First Am. Compl. ¶ 21 [#21]. For example, a nine panel test kit can test for nine different drugs. In such an instance, Defendant Millennium explains to physicians and practitioners that they can use CPT code 80101QW to bill for nine different tests.

[26] First Am. Compl. ¶ 21 [#21].

[27] Compl. [#2].

The Estate of Robert Cunningham filed a First Amended Complaint [#21] on February 25, 2011.[28] On February 28, 2011, the United States informed the court that it was declining to intervene.[29] Each named State also declined to intervene.[30] The case was subsequently partially unsealed on March 8, 2011.

The Defendant filed its Motion to Dismiss [#36] on July 22, 2011.[31] The Motion puts forth three grounds for dismissal. First, Defendant argues that the public disclosure bar of the FCA precludes Plaintiff from bringing this suit because it operates to deprive the court of jurisdiction. Second, Defendant argues that Plaintiff failed to plead fraud with the requisite particularity under Fed. R. Civ. P. 9(b). Lastly, Defendant argues that Plaintiff failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Because jurisdiction is a threshold issue, it will be examined first.

III. Discussion

  A. Public Disclosure Bar

Federal courts are courts of limited jurisdiction.[32] It is a well-established principle that jurisdiction is determined based on whether it existed at the time the plaintiff filed the original

---

[28] First Am. Compl. [#21].

[29] Notice of the U.S. that It Is not Intervening at this Time [#22].

[30] Notice of the U.S. that It Is not Intervening at this Time [#22]; Supplemental Notice of U.S. Regarding Non-Intervention at this Time [# 26].

[31] Mot. to Dismiss [#36].

[32] Morales Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002).

7

complaint.[33] If a plaintiff lacks jurisdiction at the outset of a suit, he or she cannot later amend the complaint to cure a jurisdictional defect.[34] The Fifth Circuit has recently emphasized that "the amendment process cannot 'be used to create jurisdiction retroactively where it did not previously exist.' If [relator's] complaint did not establish jurisdiction, it should have been dismissed; his amendment cannot save it."[35] It is the logical conclusion that a party cannot be granted leave to amend the complaint if the court never had jurisdiction to hear the complaint in the first place.

The False Claims Act contains a public disclosure bar, which is a jurisdictional bar.[36] A court lacks jurisdiction to hear a *qui tam* suit under the FCA unless the relator passes the public disclosure bar or fits into the original source exception outlined in 31 U.S.C. § 3730(e)(4)(B). The policy behind the bar is clear: "The public disclosure bar was 'an effort to strike a *balance*

---

[33] See Mullan v. Torrance, 22 U.S. 537, 539 (1824) ("It is quite clear, that the jurisdiction of the Courts depends upon the state of things at the time of the action brought . . . ."); Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 23 (1st Cir. 2001) (citing Morales Feliciano for this principle).

[34] Forbes v. FDIC, 850 F.Supp. 94, 97 (D. Mass. 1994) (Tauro, J.) ("The First Circuit has previously observed that a plaintiff may not use post-complaint events to create jurisdiction or satisfy prerequisites to suit."); see also Fed. Recovery Servs., Inc. v. United States, 72 F.3d 447, 453 (5th Cir. 1995); Aetna Casualty & Surety Co. v. Hillman, 796 F.2d 770, 775-76 (5th Cir. 1986) ("The citizenship of a party at the *commencement* of the action is controlling for purposes of determining diversity jurisdiction and subsequent actions do not affect the court's jurisdiction.").

[35] United States *ex rel.* Jamison v. McKesson Corp., 649 F.3d 322, 328 (5th Cir. 2011) (internal citation omitted).

[36] 31 U.S.C. § 3730(e)(4)(A); Rockwell Int'l Corp v. United States, 549 U.S. 457, 468 (2007) ("[Under the public disclosure bar,] the issue is not whether casting the creation of a cause of action in jurisdictional terms somehow limits the general grant of jurisdiction under which that cause of action would normally be brought, but rather whether a clear and explicit *withdrawal* of jurisdiction withdraws jurisdiction. It undoubtedly does so.").

8

between encouraging private persons to root out fraud and stifling parasitic lawsuits.'"[37]

In 2010–after Robert Cunningham filed the original Complaint in this suit, but before the Estate of Robert Cunningham filed the First Amended Complaint–Congress amended the public disclosure bar.[38] The current version of the public disclosure bar clearly limits suits in state court from qualifying as a prior public disclosure.[39]

As a result, the parties in this case disagree as to which public disclosure bar applies. Defendant argues that the public disclosure bar as it existed at the time the original Complaint was filed applies. Relator counters that the current version of the public disclosure bar applies because, according to Relator, it is retroactive. If Relator is correct, the California suit would not qualify as a prior, public disclosure.

The court must decide whether there was jurisdiction over Relator's FCA claim under the public disclosure bar as it existed at the time Robert Cunningham filed the original Complaint in this suit before it may move on to the issue of which public disclosure bar applies to the First Amended Complaint. If jurisdiction did not exist over this claim at the time the suit was filed,

---

[37] Schindler Elevator Corp. v. United States *ex rel.* Kirk, 131 S. Ct. 1885, 1894 (2011) (quoting Graham Cnty. Soil and Water Conservation Dist. v. United States *ex rel.* Wilson, 130 S. Ct. 1396, 1399 (2010)).

[38] Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901 (2010) (codified as amended at 31 U.S.C. § 3730(e)(4)(A) (Supp. 2010) (effective July 22, 2010)).

[39] Id. ("The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions alleged in the action or claim were publicly disclosed (i) in a *Federal* criminal, civil, or administrative hearing in which the Government or its agent is a party . . . .") (emphasis added).

then the suit must be dismissed because a party cannot amend to fix a jurisdictional defect.[40]

At the time Robert Cunningham filed the Complaint in this case, the public disclosure bar of the FCA read:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.[41]

The First Circuit has stated that in an analysis of the public disclosure bar, the court must determine:

> (1) whether there has been public disclosure of the allegations or transactions in the relator's complaint; (2) if so, whether the public disclosure occurred in the manner specified in the statute; (3) if so, whether the relator's suit is "based upon" those publicly disclosed allegations or transactions; and (4) if the answers to these questions are in the affirmative, whether the relator falls within the "original source" exception . . . .[42]

For the public disclosure bar to preclude jurisdiction, each of the first three elements must be met. If they are, then the court only has jurisdiction over the suit if the relator qualifies as an original source under the fourth element of the test. Each of the first three elements of the public disclosure bar will be addressed in turn.

---

[40] See McKesson Corp., 649 F.3d at 328.

[41] 31 U.S.C. § 3730(e)(4)(A) (2006) (amended 2010).

[42] United States, *ex rel.* Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 21 (1st. Cir. 2009) (quoting United States *ex rel.* Rost v. Pfizer, Inc., 507 F.3d 720, 728 (1st Cir. 2007) (overruled on other grounds)).

1. <u>Prior Public Disclosure</u>

The standard for a prior, public disclosure of the allegations or transactions under the FCA is clear. Public disclosure occurs "when the essential elements exposing the particular transaction as fraudulent find their way into the public domain"[43] in one of the manners specified in § 3730(e)(4)(A). The disclosure must include either (1) a direct allegation of fraud; or (2) "a misrepresented state of facts and a true state of facts so that the listener or reader may infer fraud."[44] Under the second approach, the misrepresentation is what the defendant claims as true, and the true state of facts is what demonstrates the defendant's claim as false.[45] The standard can be simply summarized as follows: "disclosure is 'public' if it is generally available to the public."[46]

In 2010, the Supreme Court rejected the notion that a potential defendant in an FCA lawsuit might attempt to "insulate [itself] from *qui tam* liability 'through careful, low key "disclosures"' of potential fraud . . . ."[47] The Court noted the frivolity of such disclosure because it would not insulate potential defendants from a suit brought by the United States.[48] The Court reiterated this stance in a separate FCA case by applying the same logic to the argument that a

---

[43] <u>United States *ex rel.* Ondis v. City of Woonsocket</u>, 587 F.3d 49, 54 (1st Cir. 2009).

[44] <u>United States *ex rel.* Poteet v. Hadler Med., Inc.</u>, 619 F.3d 104, 110 (1st. Cir. 2010).

[45] *See* <u>Ondis</u>, 587 F.3d at 54 ("Against this backdrop, our initial task is to determine whether both the City's alleged misrepresentation (that it would promote subsidized housing) and what the relator alleges was the City's true plan (that it would strive to curtail or eliminate subsidized housing) were sufficiently in the public domain to ground an inference of fraud.").

[46] <u>United States *ex rel.* Poteet</u>, 619 F.3d at 110.

[47] <u>Graham Cnty. Soil and Water Conservation Dist. v. United States *ex rel.* Wilson</u>, 130 S. Ct. 1396, 1410 (2010) (internal citation omitted).

[48] <u>Id.</u>

potential FCA defendant would attempt to insulate itself from liability by making a FOIA request.[49]

This case presents a unique set of circumstances. Typically, the prior, public disclosure is a previous lawsuit brought against the defendant for the same or similar action. Here, the alleged prior, public disclosure–the California suit–is a lawsuit brought by Millennium, the Defendant in the present FCA case, against Calloway for, *inter alia*, defamation. Although the situation is atypical, the California suit undoubtedly qualifies as a prior public disclosure under the FCA as it existed at the time Robert Cunningham filed the original Complaint in this case. In the complaint in the California suit, Millennium describes its billing practice and argues that Calloway has misrepresented it as fraudulent.[50] The exhibits attached to the complaint—three e-mails from two Calloway executives—outline Millennium's billing practice, describe what they understand to be incorrect about Millennium's approach, and refer to Millennium's billing as possibly fraudulent. The California complaint and the e-mails attached as exhibits discuss the same activity that Relator in this case argues is fraudulent under the FCA.

The public disclosure of allegations of fraud can occur when a plaintiff brings a defamation suit alleging that the defendant has represented plaintiff's actions to be fraudulent.[51] This interpretation of the FCA's jurisdictional requirement furthers the policy that underlies the public

---

[49] Schindler Elevator Corp. v. United States *ex rel.* Kirk, 131 S. Ct. 1885, 1895 (2011).

[50] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶ 7 )].

[51] See Schindler Elevator Corp., 131 S. Ct. at 1895; Graham Cnty. Soil and Water Conservation Dist., 130 S. Ct. at 1410.

disclosure bar.[52] When a company like Millennium brings a defamation suit against accusations of fraud, it is not working to conceal its interpretation of the law. Rather, it is voluntarily bringing to light the actions that it took. Additionally, it is not insulating itself from potential liability in a lawsuit brought by the United States government. In such a case, a relator is not necessary to "root out [the] fraud," and a *qui tam* suit should be denied if the circumstances fulfill the other prongs of the public disclosure bar.

## II. Specified Manner

Under the public disclosure bar as it existed when Robert Cunningham filed the original Complaint in this case, prior public disclosure could occur in either a state or federal lawsuit. Public disclosure occurs through any public documents available on the docket in that civil hearing.[53] The California suit clearly meets this standard, because the complaint exposes the supposed fraud. There is, therefore, no need to discuss this element of the prior public disclosure at length.

## III. Based Upon

The First Circuit recently joined a majority of circuits by determining that the "based upon" requirement in § 3730(e)(4)(A) means that the "relator's allegations are substantially similar to information disclosed publicly," even if the relator did not use that information as the

---

[52] See Schindler Elevator Corp., 131 S. Ct. at 1894.

[53] See, e.g., United States *ex rel.* Mckenzie v. BellSouth Telecomms. Inc, 123 F.3d 935, 939 (6th Cir. 1997) ("'Public disclosure' also includes documents that have been filed with a court, such as discovery documents and a plaintiff's complaint." (citing United States *ex rel.* Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 652 (D.C. Cir. 1994)).

13

basis for his claim.[54] To determine whether the information is "substantially similar," the court must compare what was previously disclosed with relator's FCA complaint.[55]

Here, in the original Complaint, Robert Cunningham alleges that Millennium's PBM allowed physicians to "bill both government and private health insurance companies for the multiple drug classes detected by the test kit."[56] Cunningham also alleges that this practice is fraudulent.[57] Cunningham brings four counts of violations of the FCA.[58] The first count, and the only one at issue here, is for false or fraudulent claims for payment or approval.[59] In that count, Cunningham states:

> MILLENNIUM knowingly encouraged defendants JOHN DOE 1-10,000 to perform and order medically excessive and unnecessary testing by encouraging them to use a multi-class qualitative drug screen which uses a single specimen, and to bill the government and private insurance programs multiple units for the single testing devices. MILLENNIUM encouraged defendants JOHN DOE 1-10,000 to begin

---

[54] United States *ex rel.* Ondis v. City of Woonsocket, 587 F.3d 49, 57 (1st Cir. 2009); see also United States *ex rel.* Poteet v. Hadler Med., Inc., 619 F.3d 104, 114 (1st. Cir. 2010) (As we establish in Ondis, an action is 'based upon' prior disclosures if the relator's complaint contains allegations that are 'substantially similar to' those disclosures.").

[55] United States *ex rel.* Poteet, 619 F.3d at 114.

[56] Compl. ¶ 18 [#2].

[57] Compl. ¶¶ 20, 22, 24, 53 [#2].

[58] Compl. ¶¶ 52-63 [#2].

[59] Compl. ¶ 18 [#2]. The three other counts are (1) misrepresentation of medical necessity, (2) misrepresentation of the material facts, and (3) misrepresentation of the samples tested. These counts do not appear in the First Amended Complaint and thus have no bearing on this motion to dismiss. Even if these claims were not barred by the public disclosure bar they do not provide Relator with the ability to amend the complaint to include a claim that was jurisdictionally barred at the time Cunningham filed the original Complaint.

14

> performing point of care testing in their office and to improperly bill the government under the CPT codes 80101, 80101QW, and/or pathology and laboratory codes. Defendants knew that these practices and procedures resulted in fraudulent claims to the federal government through the Medicare, Medicaid, and other federally funded programs.[60]

There is no doubt that the allegations made in the first count of the original Complaint are substantially similar to the information disclosed in the California suit complaint. In the complaint for the California suit, Millennium describes its PBM.[61] If this is not enough, the e-mails written by executives of Calloway–which are attached to the complaint as exhibits–go in to extensive detail about what Calloway assumes to be Millennium's fraudulent activity.[62] In one of the e-mails, Stephen Schur writes: "Participating in any plan to increase revenue by billing excessive codes violates a number of federal and state statutes."[63] In another e-mail, Greg Williams states the following about Millennium's practices:

> First, there are the patients and insurances being billed twice for the same services. Medicaid and Medicare frown upon being billed twice for the same thing. Bills are as high as $1500-$2000. Which is outrageous. Second, these in-house screens that clinics are billing the 80101 code for should be bundled, but clinics are "un-bundling" each metabolite screened for on the cup or test strip and again Medicaid and

---

[60] Compl. ¶ 53 [#2].

[61] Pl.'s/Relator's Opp'n Def. Mot. to Dismiss [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. ¶ 7 )].

[62] See Pl.'s/Relator's Opp'n to Def. Millennium Labs. of Cal.'s Mot. to Dismiss the First Am. Compl. [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc., Exs. A-C.)].

[63] Pl.'s/Relator's Opp'n to Def. Millennium Labs. of Cal.'s Mot. to Dismiss the First Am. Compl. [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. Ex. C.)].

15

>> Medicare frowns upon that.[64]

In general, in these e-mails, Calloway executives allege that Millennium implements a plan that billed insurance agencies and the federal government multiple times for the same test. The information disclosed in the complaint for the California suit is, thus, substantially similar to the allegations in the original Complaint in the case before us.

Relator's *qui tam* suit is barred by the public disclosure bar because all of the elements of the bar are satisfied. First, there has been public disclosure of the allegations or transactions in Relator's Complaint. Second, the public disclosure occurred in the manner specified in the statute. Third, Relator's suit is "based upon" the previously publicly disclosed allegations or transactions.

Relator does not even attempt to argue that it fits into the original source exception to the bar. Because the public disclosure bar is a jurisdictional bar, the court DISMISSES WITH PREJUDICE Plaintiff's FCA claim. The court will not consider Defendant's two other grounds for dismissal.

    B.    State Law Claims

In addition to the federal FCA claim, Plaintiff brings fifteen claims under the laws of fourteen States and the District of Columbia. The First Circuit has recognized that federal district courts have broad discretion in deciding whether to exercise jurisdiction over pendent state-law claims in non-diversity cases.[65] Where all federal claims are dismissed before trial, "the balance of

---

[64] Pl.'s/Relator's Opp'n to Def. Millennium Labs. of Cal.'s Mot. to Dismiss the First Am. Compl. [#42, Ex. 1(Compl. in Millennium Labs. Inc., v. Calloway Labs., Inc. Ex. A.)].

[65] Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).

factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."[66]

Here, Plaintiff's federal claim has been dismissed. In accordance with the principles laid out in Newman[67] and Cohill,[68] this court, in its discretion, declines jurisdiction over Plaintiff's pendent state-law claims.

IV. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [#36] is ALLOWED. Plaintiff's federal claim, Count I, in the First Amended Complaint is DISMISSED WITH PREJUDICE. Plaintiff's state law claims, Counts II- XVI in the First Amended Complaint, are DISMISSED WITHOUT PREJUDICE. Lastly, pursuant to 31 U.S.C. § 3730(b), the Government has filed a Notice of United States' Consent to Dismissal [#54] stating that it consents to dismissal of this action.

AN ORDER HAS BEEN ISSUED.

    /s/ Joseph L. Tauro
United States District Judge

---

[66] Id. at 964 (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice)).

[67] Newman, 930 F.2d at 963.

[68] Cohill, 484 U.S. at 350.